UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
RAFAEL MONTANEZ,

       Plaintiff,

                                    09CV5652 (SJ) (SMG)

       v.

                                    <u>MEMORANDUM
AND ORDER</u>

CITY OF NEW YORK, et al.,

       Defendants.
----------------------------------------------------X

**A P P E A R A N C E S**
CRONIN & BYCZEK LLP
1983 Marcus Avenue
Suite C120
Lake Success, NY 11042
By: Rocco G. Avallone
Attorneys for Plaintiff

NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
By: Daniel Gomez-Sanchez
Attorneys for Defendants

**JOHNSON, Senior District Judge:**

       Plaintiff Rafael Montanez ("Plaintiff" or "Montanez") filed the instant action alleging: (1) discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq.</u>; (2) a claim pursuant to 42 U.S.C. §

1

1983 alleging that the City of New York engages in a policy of discrimination as defined by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978);[1] and (3) claims defined by related state law. Defendants move for summary judgment. Based on the submissions of the parties, the June 8, 2012 oral argument before this Court, and for the reasons stated below, Defendants' motion is granted.

## BACKGROUND

Rafael Montanez is a Latino male who was hired by the New York Police Department ("NYPD") and appointed Police Officer on July 18, 1996. He was assigned to the 70th Precinct in Brooklyn. On September 22, 2000, he was arrested by the New York State Parks Department and charged with disorderly conduct, resisting arrest, harassment and obstruction of governmental administration. Following this event, his problems at work were many. He was initially suspended from duty while departmental charges were preferred against him, ultimately lost 45 vacation days and was placed on "dismissal probation" for one year, commencing in 2003. At this time, Plaintiff worked the 8:00am – 4:00pm tour of duty. Plaintiff was informed in writing that pursuant to departmental policy, his dismissal probation could be extended if, during that term of probation, he took sick leave, vacation leave, or was placed on limited duty. Indeed, Plaintiff's

---
[1] Plaintiff's Monell claim has since been withdrawn.

dismissal probation was extended to 2005 for a number of these reasons. At the end of his second year of dismissal probation, Plaintiff was placed in the "Performance Level Monitoring Program ('PMP')" Level I due to three negative evaluations citing, <u>inter alia</u>, his lateness and interpersonal problems. As to his lateness, Plaintiff cited his twin autistic sons, whose early morning care (combined with traffic) made it difficult for him to arrive promptly at 8:00am. In response, Plaintiff was placed on the noon – 8:00pm shift.

Another undisputed contributor to Plaintiff's attendance problem was his medical condition. He claims to have suffered a total of five injuries to his back: a 2001 injury sustained on-duty while apprehending a perpetrator; an injury sustained while serving a tour of military duty in 2002; a 2003 injury sustained while lifting a five-gallon water cooler jug in his home; another on-duty injury in 2005; and an off-duty injury in 2007, sustained when one of his sons jumped on his back. Each of these conditions contributed to his absences at work and Plaintiff has been on what the NYPD refers to as the "Chronic Sick" list almost continuously since December 2003.

Plaintiff continued to receive negative evaluations for his lateness and difficulty interacting with others. On April 9, 2006, he was placed on PMP Level II (a more serious probationary status) for a period of at least 18 months. During his time on PMP Level II, specifically, on April 15, 2007, Plaintiff was involved in an

incident one morning during which a Sergeant addressed a group of officers as "hoes," to which Plaintiff retorted, "Sarge, not just 'hoes,' nappy-headed hoes." Like Plaintiff, the Sergeant is male and Latino. Three female officers present were offended by this comment and both Plaintiff and the Sergeant were transferred. Plaintiff was transferred to the 107th Precinct in Queens and was assigned to attend the "Professional Conduct in the Workplace" seminar offered at the Police Academy. He was placed on the 7:00am – 3:00pm tour of duty. His performance review for 2007 indicated continual lateness as well as problems interacting with others.

In March 2008, Plaintiff submitted a request to have back surgery. The NYPD's district physician denied the request, finding the procedure unnecessary. Plaintiff had the surgery without departmental clearance on April 30, 2008, and returned to the force in June.

That June, Montanez was placed on PMP Level III, an even more serious probationary status. His tour was changed from 7:00am – 3:00pm to 4:00pm - midnight, again in response to his claim that his sons' morning care and rush hour traffic caused his lateness. Plaintiff reported sick on several occasions in late 2008 after being found fit for duty, albeit restricted duty.

In August 2008, Plaintiff applied for an accident disability pension. While that was pending, he reported a theft to his locker, to wit: a missing duty coat and

"reefer jacket." In the course of the investigation it was discovered that Plaintiff's combination lock bore a serial number, in violation of NYPD policy. This violation, along with others based on his lateness, absence and his professional conduct, led to another departmental trial which resulted in a 60-day suspension and an additional period of dismissal probation. While that trial was pending, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation.

In May 2009, the NYPD's Article II Medial Board (the "Board") determined that the herniated disc that Plaintiff attributed to his 2008 surgery was not related to any of the on-the-job injuries offered by Plaintiff because the injury leading to his surgery was, according to the evidence presented, too recent to be job-related. He ultimately retired on ordinary disability on August 13, 2009.[2] The Board's determination was later remanded in order to permit him to substantiate his claim with a line-of-duty injury report from the alleged 2005 injury, and supporting medical documentation, but he failed to do so.

Defendants move for summary judgment, arguing that Plaintiff cannot demonstrate a nexus between the challenged actions and his race, and that his hostile work environment claim is barred.

---

[2] The difference to Plaintiff is that an accident disability pension would have entitled him to 75% of his annual earnings each year for the rest of his life, tax-free. The regular disability pension entitles him to 50%.

**DISCUSSION**

*Exhaustion*

Defendants claim that because Plaintiff did not allege a hostile work environment claim in his EEOC charge, the claim is unexhausted and cannot be considered herein. However, the Court's jurisdiction is proper not only on issues specifically raised in Plaintiff's EEOC's charge, but also those claims "reasonably related" to those charges alleged in the EEOC charge. "The scope of the judicial complaint in a Title VII action has generally been construed to be limited not to the words of the charge but to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Smith v. Amer. President Lines, Ltd., 571 F.2d 102, 108 n.10 (2d Cir. 1978); see also Martin v. MTA Bridges & Tunnels, 610 F. Supp. 2d 238, 253 (S.D.N.Y. 2009); Trindade v. Leavitt, 2005 WL 1541050, at *2 (E.D.N.Y. June 30, 2005). Because Plaintiff's claim that he was subjected to a hostile work environment is also based on his race, the Court finds that it is reasonably related to his charge of discrimination insofar as an investigation of his race-based discrimination claim would require inquiry into the same facts necessary to bring a hostile work environment claim. Therefore, this claim can be properly considered at this stage.

*Summary Judgment Standard*

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence

of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

*McDonnell Douglas Burden-Shifting Analysis*

Discrimination claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., have long been guided by the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this test, Plaintiff must first make a *prima facie* case of discrimination.

In order to establish a *prima facie* case of discrimination based on race under Title VII, an employee must show that he or she: "(1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) that the circumstances of the adverse employment decision give rise to an inference of discrimination." See Mandell v. Count of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (applying the framework set forth in

McDonnell Douglas). Assuming the plaintiff demonstrates a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason" for the adverse action. Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). "If the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination." See id. Finally, in order to survive a motion for summary judgment, plaintiff must offer "concrete particulars" to substantiate the claim. Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985).

The Court will assume arguendo that Plaintiff has met his *prima facie* burden, at which point Defendants have the burden of production to demonstrate a non-discriminatory reason for Plaintiff's administrative charges, negative evaluations and denial of an accident disability pension. Given the above summary of Plaintiff's performance, which he does not dispute, the Court finds that Defendants have carried their burden. See, e.g., Davis v. State Univ. of N.Y., 802 F.2d 638, 641 (2d Cir. 1986) (noting that an "employer need not prove . . . that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory"); Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal").

The final inquiry in resolving Plaintiff's claim of discrimination is whether he can demonstrate that the charges brought against him, and the denial of an accident disability pension were more likely than not based on discrimination. To that end, Plaintiff's submissions are woefully inadequate. He does not dispute any charge, specification, or negative evaluation as containing false information. He does not claim that the infractions did not occur or are not punishable. Instead he claims that white police officers in his position would not have been treated as he was, and points to a white officer who arrives to work intoxicated and does so routinely and without penalty. However, for want of admissible evidence beyond his conclusory allegations, his claim is insufficient to survive summary judgment. See Nieves v. Angelo, Gordon & Co., 341 Fed. Appx. 676, 678 (2d Cir. 2009) ("A plaintiff cannot defeat a summary judgment motion based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'") (citation omitted); see also Zann Kwan v. Andalex Group, LLC, 2012 WL 1862768, at *5 (S.D.N.Y. May 22, 2012) ("More than simple reassertion of conclusory allegations of discrimination is required.") (citing Davis v. Oyster Bay–East, 2006 WL 657038, at *11 (E.D.N.Y. Mar. 9, 2006), aff'd, 220 Fed. Appx. 59 (2d Cir. 2007)).

Moreover, some of the other individuals he posits to be his comparators are clearly not. He complains that the Sergeant who initiated the discussion about "hoes" was punished less severely than Montanez was because that Sergeant was transferred to a precinct far more convenient than the 107th Precinct in Queens.

What he fails to mention is that that Sergeant was also Latino.  Then he argues that he was treated worse than that Sergeant on the basis of rank.  However, the rank of "police officer" is not a protected group under Title VII.   Next, he argues that a Sergeant Joseph Gray ("Gray"), who struck and killed three pedestrians while intoxicated, was treated better than him because Gray was initially released without bail and "was never placed in a cell nor arrested."  However, it was the Parks Department who arrested Plaintiff, making his argument that the NYPD treated him differently in the process of his apprehension specious.  Additionally, the charges surrounding his 2000 arrest were ultimately dismissed, while Gray was convicted of manslaughter after a highly-controversial trail that focused on the NYPD's alleged "blue wall of silence," by which officers attempted certain cover-ups in the wake of Gray's car accident.  One struggles to see the logic in Plaintiff's argument that Gray is a similarly-situated officer or was treated better than him, except insofar as Plaintiff was bereft in his wish that the "blue wall" protect his misconduct, too.  However, this Court will not hold that misconduct ought to be covered up.  Therefore, his claim of discrimination on the basis of race is dismissed.

Plaintiff's claim of hostile work environment must similarly be dismissed, as it would require him to demonstrate a nexus between the City's conduct and his race.[3]  For the reasons already stated, he has failed to do that.

---

[3] See Patane v. Clark, 508 F.3d 106 (2d Cir. 2007).

*Retaliation*

The McDonnell Douglas burden-shifting test also applies to Plaintiff's claim of retaliation. To put forth a *prima facie* case of retaliation, Plaintiff must show: (1) that he engaged in an activity protected by Title VII; (2) that his employer was aware of that activity; (3) that he suffered an adverse employment action; and (4) that there exists a causal connection between the protected activity and the adverse action. See Sista v. CDC Ixis North Amer., Inc., 445 F.3d 161, 177 (2d Cir. 2006); Back v. Hastings-on-Hudson Union Free Sch. Dist., 365 F.3d 107, 123-4 (2d Cir. 2004). Again, if the employer proffers a legitimate non-retaliatory reason for the adverse action, Plaintiff must carry the ultimate burden of demonstrating that the proffered reason is a pretext for retaliation.

Here, Plaintiff claims he engaged in a protected activity by complaining about discrimination but admits that his complaints at work were of a general nature, claiming "harassment," and he made no complaints to supervisors of race discrimination. Therefore, the only protected activity in the record is the filing of his EEOC charge, which he did sometime in April of 2009, and of which the NYPD was unaware until July 31, 2009, less than two weeks before Plaintiff retired. To meet his *prima facie* burden, he would have to demonstrate an adverse action subsequent to the filing of his EEOC charge. While the adverse action Plaintiff claims he suffered was denial of an accident disability pension, the Board recommended denial of that pension on May 12, 2009, prior to the NYPD's

knowledge of his EEOC complaint.  Moreover, that decision was remanded to permit Plaintiff to submit new evidence linking his surgery to an earlier, on-duty injury versus the most recent, off-duty injury, which he did not submit.  Therefore, he has failed to demonstrate a connection between his EEOC complaint and the denial of an accident disability pension.

## CONCLUSION

Plaintiff's complaint is hereby dismissed.  While it might be the case that he was frequently written-up and written-up for infractions of any and every magnitude, he does not deny committing any of the charged infractions and has submitted no evidence beyond his deposition testimony to suggest that they were brought against him because he is Latino.  It is not enough to argue that just because an employer-employee relationship has broken down that it has done so for reasons pertaining to race.  It is Plaintiff's burden to show that the challenged conduct happened for an illegal reason, and not just because his supervisors may not have liked him.  The Clerk of the Court is directed to close the case.

**SO ORDERED.**

Dated: June 22, 2012  　　　　　　　　　　　　_/s_____
　　Brooklyn, NY  　　　　　　　　　　　　　STERLING JOHNSON, JR.
　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge